[No. C000046. Third Dist. Feb. 9, 1988.]

BUHLERT TRUCKING et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD and HAROLD
GILPIN, Respondents.

COUNSEL

Hanna, Brophy, MacLean, McAleer & Jensen and Joseph R. Montgomery for Petitioners.

Canelo, Hansen & Wilson and Rickey D. Wallace for Respondents.

Froba, Frailing & Rockwell and David J. Froba as Amici Curiae on behalf of Respondents.

OPINION

BLEASE, Acting P. J.— **(1a)** In this case we hold (a) that under Labor Code section 4600[1] an employer is liable for the full award of costs of future medical treatment to an employee injured in the course of his employment where the need for such medical treatment is partially attributable to a previous industrial injury and (b) that section 4600 has not been impliedly repealed or amended by the later enactment of section 3208.2. To the extent that our earlier decision in *Savage Plumbing Co.* v. *Workers' Comp. Appeals Bd.* (1982) 131 Cal.App.3d 517 [182 Cal.Rptr. 485], is inconsistent with this holding we disapprove it. We will therefore affirm the decision of the Workers' Compensation Appeals Board (Board) holding Buhlert Trucking and its workers' compensation carrier, Insurance Company of North America (Buhlert), liable for the full award of future medical treatment to applicant Harold Gilpin.

### FACTS AND PROCEDURAL BACKGROUND

In 1969, Gilpin injured his lower back during the course of his employment in Oregon. Back surgery (spinal fusion) was performed in 1970 and again in 1971. In 1973 Gilpin suffered another industrial injury in Oregon. Following an unsuccessful surgery, he remained off work for one and one-half years and continued under the care of his physician. In 1978, he underwent another surgery.[2] Following this fourth surgery, Gilpin had no back symptoms for two years until the specific injury which serves as the basis of this litigation. During the interim he traveled to Alaska where he worked for a lumber company on a logging pond. He then worked as a truck driver, transporting frozen food in five western states. In 1979, he moved to Texas where he worked as a roofer.

In September 1980, Gilpin moved to California and was hired by Buhlert as a truck driver. On September 26, 1980, he injured his back when he stepped out of the truck and into a hole. As of August 31, 1983, Gilpin had not returned to work.

Gilpin filed a worker's compensation claim with the Board. He asserted that the September 1980 injury caused disability from the date of the injury and continuing. At the hearing on the application, the report of the agreed-upon medical examiner was introduced. The report stated that Gilpin "had an ongoing disability in his lower back as described in the medical records

---

[1] All further references to sections, unless otherwise specified, are to the Labor Code.

[2] The record reveals that Gilpin filed a workers' compensation claim for the second Oregon injury. It includes no information on the award, if any, received.

prior to 1980. Therefore, apportionment to the pre-existing condition is indicated.

" . . . . . . . . . . . . . . . . . . . .

"The patient's injury of September 26, 1980 would therefore be an aggravation of an ongoing pre-existing condition. [¶] . . . I would apportion 40% to the pre-existing and 60% to the specific injury of September 26, 1980."

The parties stipulated to the following: (1) the injury caused temporary disability for the period from September 27, 1980, through August 31, 1983, for which indemnity is payable at $154 and $186.67 per week; and (2) the injury caused a permanent disability of 33 ¾ percent for which indemnity is payable at $70 per week in the sum of $10,027.50.

The only issue not resolved by stipulation concerned Buhlert's liability for future medical treatment. The parties agreed that Buhlert was liable for at least 60 percent of the costs of future medical treatment. The dispute concerns the remaining 40 percent. The parties framed the issue to be decided by the Board as follows: "[G]iven a valid apportionment to an out-of-state industrial injury for future medical care, does this apportionment reduce applicant's award of benefits in the instant case." The workers' compensation judge found that the costs of medical treatment were not apportionable and that Buhlert was responsible for the full award for future medical care.[3] The Board denied Buhlert's petition for reconsideration of the petition. This petition for writ of review followed.

## DISCUSSION

The workers' compensation law (§ 3200 et seq.) implements the mandate of article XIV, section 4, of the California Constitution that the Legislature create a "complete system" of compensation for injury or death to an employee incurred in course of employment. Since the source of this law is statutory, the rights and liabilities of the parties must be predicated upon the statutes and the cases which interpret them.[4] As we shall explain, the medical benefits due Gilpin are mandated by the provisions of section 4600.

---

[3] In addition to asserting that medical treatment is not apportionable under California law, the judge further stated that Buhlert had failed to meet its burden of proving that Gilpin had an "immediate pre-existing disability."

[4] Where the language of a statute is ambiguous, the "legislative command is that [it] shall be liberally construed 'with the purpose of extending [its] benefits for the protection of persons in the course of their employment.' (Lab. Code, § 3202)." (*Granado* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 399, 404 [71 Cal.Rptr. 678, 445 P.2d 294]; see also *In-Home Supportive Services* v. *Workers' Comp. Appeals Bd.* (1984) 152 Cal.App.3d 720, 733 [199 Cal.Rptr. 697].) As appears, the statutes at issue are unambiguous and no resort to this command is required. (See, e.g., *Granado, supra,* 69 Cal.2d at p. 405.)

I

A.

As part of the "complete [statutory] system" of workers' compensation, article XIV, section 4 of the California Constitution specifies that there shall be "full provision for such medical, surgical, hospital and other remedial treatment as is requisite to cure and relieve from the effects of [ ] injury" incurred in the course of employment. Labor Code section 4600 implements this direction in providing that "[m]edical, surgical, chiropractic, and hospital treatment, including nursing, medicines, medical and surgical supplies, crutches, and apparatus, including artificial members, which is reasonably required to cure or relieve from the effects of the injury shall be provided by the employer." In addition, section 4601 requires that the services of a consulting physician shall be at the expense of the employer.

These sections were construed in *Granado, supra,* 69 Cal.2d 399, as precluding the apportionment of liability for medical expenses rendered an injured worker, notwithstanding that they were partially made necessary by a preexisting injury. The court said: "There can be no doubt that medical expense is not apportionable. Section 4600 of the Labor Code states that the employer shall provide such treatment which is reasonably required to cure or relieve from the effects of the injury, and section 4601 of that code provides that 'All' of the doctor treatment shall be at the expense of the employer. Neither section 4600 nor any of the succeeding sections in the article of the code dealing with medical and hospital treatment state or even suggest that the employer may pay part of the expenses." (*Id.,* at pp. 405-406.) The reason for this, said the court, is that "[i]f medical expense reasonably necessary to relieve the industrial injury were apportionable, a workingman, who is disabled, may not be able to pay his share of the expenses and thus forego treatment. Moreover, the uncertainties attendant to the determination of the proper apportionment might cause employers to refuse to pay their share until there has been a hearing and decision on the question of apportionment, and such delay in payment may compel the injured workingman to forego the prompt treatment to which he is entitled." (*Id.,* at p. 406.) The duty imposed by section 4600 upon an employer is joint and several, subject only to the right of contribution as between employers. (See *Royal Globe Ins. Co.* v. *Industrial Acc. Com.* (1965) 63 Cal.2d 60, 62, fn. 1 [45 Cal.Rptr. 1, 403 P.2d 129]; *Fibreboard Paper Products Corp.* v. *Industrial Acc. Com.* (1965) 63 Cal.2d 65, 67 [45 Cal.Rptr. 5, 403 P.2d 133].)

Though *Granado* concerned the liability of an employer for the contributing effect of a preexisting *non* industrial injury, there is nothing in section 4600 or, as we next show, elsewhere in the "complete" workers' compensation statutory system, to preclude its application to medical treatment, whether present or future, arising from the combined effects of present and preexisting industrial injuries.

### B.

The workers' compensation laws provide for a variety of benefits to injured employees. They include compensation for temporary disability (§§ 4650, 4653), permanent disability (§§ 4650, 4658-4660) and medical care (§§ 4600-4605). Their separate statutory treatment serves different legislative goals. "Employer liability for medical and surgical services is provided in major part in order to facilitate the worker's speedy recovery and to maximize his productive employment. (*Zeeb* v. *Workmen's Comp. App. Bd.* (1967) 67 Cal.2d 496, 500 [62 Cal.Rptr. 753, 432 P.2d 361].) Temporary disability indemnity is intended primarily to substitute for the worker's lost wages, in order to maintain a steady stream of income. (See *Granado* v. *Workmen's Comp. App. Bd., supra,* 69 Cal.2d at pp. 403-404.) Permanent disability indemnity has a dual function: to compensate both for actual incapacity to work and for physical impairment of the worker's body, which may or may not be incapacitating. (*Id.,* at p. 404.)" (*J. T. Thorp, Inc.* v. *Workers' Comp. Appeals Bd.* (1984) 153 Cal.App.3d 327, 333 [200 Cal.Rptr. 219].)

Two statutes, sections 4663[5] and 4750[6] (commonly referred to as the "apportionment" statutes), limit the liability of an employer to an employee for benefits, but only for benefits for *permanent* disability which is caused by successive injuries. They provide that an employer need not provide an employee that portion of permanent benefits which is attributable to a preexisting industrial disease or injury, the latter section providing so explicitly and the former by judicial construction (see *Granado* v. *Workmen's Compensation App. Bd., supra,* 69 Cal.2d at p. 406; see also, e.g., *Callahan* v. *Workers' Comp. Appeals Bd.* (1978) 85 Cal.App.3d 621 [149 Cal.Rptr. 647];

---

[5] Section 4663 provides: "In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury."

[6] Section 4750 provides: "An employee who is suffering from a previous permanent disability or physical impairment and sustains permanent injury thereafter shall not receive from the employer compensation for the later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with or in relation to the previous disability or impairment. [¶] The employer shall not be liable for compensation to such an employee for the combined disability but only for that portion due to the later injury as though no prior disability or impairment had existed."

*Dorman* v. *Workers' Comp. App. Bd.* (1978) 78 Cal.App.3d 1009, 1017 [144 Cal.Rptr. 573]; Cal. Workers' Compensation Practice (Cont.Ed.Bar 1985) § 1434, p. 573; but cf. the "lighting up" doctrine, *Ballard* v. *Workmen's Comp. App. Bd.* (1971) 3 Cal.3d 832, 837 [92 Cal.Rptr. 1, 478 P.2d 937]). Thus, sections 4663 and 4750 do not affect the apportionment of liability for medical benefits between employer and employee. (See *Granado, supra,* 69 Cal.2d at p. 401; *Pacific Gas & Elec. Co.* v. *Ind. Acc. Com.* (1961) 56 Cal.2d 219, 222 [14 Cal.Rptr. 548, 363 P.2d 596]; *Callahan* v. *Workers' Comp. Appeals Bd., supra,* 85 Cal.App.3d at pp. 628-629.)

The apportionment of liability between employer and employee must be distinguished from the right of contribution between employers for their shares of the liability which they jointly and severally owe the employee. In *Royal Globe Ins. Co.* v. *Industrial Acc. Com., supra,* 63 Cal.2d 60, the court held that, although an employer was liable to its employee for *all* temporary disability and *medical benefits* accruing from successive injuries in two employments, it had a right of contribution from the prior employer for that portion of the benefits attributable to the prior industrial injury. The court emphasized that "we are here involved only with apportionment[7] between [employers]. There can be no apportionment as to the injured worker. *Both [employers] may be held fully liable (jointly and severally) to him [citations].*" (*Id.,* at p. 62, fn. 1; italics added.) The court asserted that "to insure that the employee receives his payments promptly, the commission should first hold at least the last employer fully liable to him, before holding (a) separate proceeding [to determine each employer's share of such liability]." (*Id.,* at p. 63.) The decision in *Royal Globe, supra,* was followed in *Fibreboard Paper Products Corp.* v. *Industrial Acc. Com., supra,* 63 Cal.2d 65.

■ These cases, together with *Granado, supra,* establish that, where the need for medical treatment arises from the combined effect of two or more distinct industrial injuries (*Fibreboard*), an industrial and nonindustrial injury (*Granado*), or a cumulative industrial injury attributable to more than one employment (*Royal Globe*), a worker is entitled to *full* medical treatment from the employer in a position to provide it, generally the last employer.[8] If the injuries contributing to the need for such benefits are

---

[7] Although the term "apportionment" is used in *Royal Globe, supra,* and in *Fibreboard Paper Products, supra,* to refer to the allocation of liability among successive carriers and employers, it is actually a matter of contribution. (See 2 Hanna, Cal.Law of Employee Injuries and Workmen's Compensation (2d ed. 1987) § 14.03(3)(b).)

[8] We need not reach in this case the potentially troublesome issues arising in cases in which a former employer, by virtue of joint and several liability, is made the subject of an employee's action for medical treatment partially attributable to a later industrial injury. We do note that section 4600 has been amended to limit the circumstances in which an employee may recover for treatment rendered by his personal physician without the consent of the employer.

industrially caused the employers are jointly and severally liable to the employee for the award. The employer extending the benefits may seek reimbursement from any other employer jointly and severally liable by virtue of an industrial injury which contributed to the need for temporary disability or medical treatment.

## II

■■■ Buhlert claims that it is liable only for that portion of the medical expenses which is attributable to the injury arising from its employment by virtue of section 3208.2.[9] That section was enacted in 1968 as part of a bill which also added section 3208.1[10] and amended section 5303.

The unspoken premise of Buhlert's position is that section 3208.2 impliedly repeals section 4600 as construed by the cases we have discussed. Even apart from the doctrine that such repeals are disfavored (See 1A Sutherland, Statutory Construction (4th ed. 1985) §§ 23.09, 23.10), section 3208.2 plainly does not do so. Its contrary purpose is revealed, not only by its language but, as we shortly show, by the authoritative declarations accompanying its enactment.

### A.

Section 3208.2 provides: "When disability, need for medical treatment, or death results from the combined effects of two or more injuries, either specific, cumulative, or both, all questions of fact and law shall be separately determined with respect to each such injury, including, but not limited to, the apportionment between such injuries of liability for disability benefits, the cost of medical treatment, and any death benefit."

The legislative committee comment accompanying the section says that its purpose is "[t]o nullify the effect upon the law of Workmen's Compensa-

---

We also note that a *previous* employer's "liability" in cumulative injury cases is limited by section 5500.5, which provides a detailed scheme for such cases.

[9] Section 3208.1 defined specific and cumulative injuries. "An injury may be either: (a) 'specific,' occurring as the result of one incident or exposure which causes disability or need for medical treatment; or (b) 'cumulative,' occurring as repetitive mentally or physically traumatic activities extending over a period of time, the combined effect of which causes any disability or need for medical treatment; provided, however, that the date of cumulative injury shall be the date of disability caused thereby."

It was amended in 1973 to provide that the "date of cumulative injury shall be the date determined under Section 5412" (Stats. 1973, ch. 1024, § 1, p. 2032), i.e., "The date of injury in cases of occupational diseases or cumulative injuries is that date upon which the employee first suffered disability therefrom and either knew, or in the exercise of reasonable diligence should have known, that such disability was caused by his present or prior employment."

[10] Sections 3208.1 and 3208.2 are included in part 1, chapter 1, which is entitled, "Scope and Operation," "General Provisions." Section 5303 is part of part 4, chapter 1, and is entitled, "Compensation Proceedings," "Jurisdiction."

tion of certain recent decisions of the Court of Appeal and of the Supreme Court including Dow Chemical Co. v. Workmen's Compensation Appeals Board, 67 AC 488 [(1967) 67 Cal.2d 483]; DeLuna v. Workmen's Compensation Appeals Board, 258 ACA 271 [(1968) 258 Cal.App.2d 199]; Miller v. Workmen's Compensation Appeals Board, 258 ACA 589 [(1968) 258 Cal.App.2d 490]; and Fruehauf Corporation v. Workmen's Compensation Appeals Board, 252 ACA 600 [a 1968 Court of Appeal decision vacated by the Supreme Court's grant of petition for hearing]." (Assem. J. (1968 First Ex. Sess.) pp. 21-22.)

These cases share a unifying purpose to which the corrective action is directed. In each case the employee sought recompense for benefits causally attributable to a prior industrial injury for which a claim could have but was not timely made within the statute of limitations. In each case the court circumvented the limitation by merging the earlier with the later claim under the theory they could be jointly maintained as merged in the claim for the latest injury. Of significance here, in *De Luna* v. *Workmen's Comp. App. Bd.* (1968) 258 Cal.App.2d 199 [65 Cal.Rptr. 421], this theory was advanced to allow an employee reimbursement under section 4600 for an otherwise untimely claim for *past* medical treatment made necessary by a prior industrial injury.

### B.

The purpose of this antimerger doctrine is made explicit by the following italicized amendment to section 5303. "There is but one cause of action for each injury coming within the provisions of this division. All claims brought for medical expense, disability payments, death benefits, burial expense, liens, or any other matter arising out of such injury may, in the discretion of the appeals board, be joined in the same proceeding at any time; *provided, however, that no injury, whether specific or cumulative, shall, for any purpose whatsoever, merge into or form a part of another injury; nor shall any award based on a cumulative injury include disability caused by any specific injury or by any other cumulative injury causing or contributing to the existing disability, need for medical treatment or death.*" (Stats. 1969, First Ex. Sess. 1968, ch. 4, § 10, pp. 33-34, italics added.)

### C.

The procedural implementation of this policy is set forth in section 3208.2. It says that "all questions of fact and law" concerning such issues as "the apportionment between [cumulative] injuries" shall "be *separately determined* with respect to each such injury . . . ." (Italics added.) This says nothing about the substantive law of apportionment. Rather, it is written,

consistent with its antimerger history, to preclude the cumulation of injuries subject to separate statutory remedies in a single claim so as to escape the bar of the statute of limitations. That is accomplished by their separate consideration. This is the conclusion reached in *Wilkinson* v. *Worker's Comp. Appeals Bd.* (1977) 19 Cal.3d 491 [138 Cal.Rptr. 696, 564 P.2d 848]: "Despite the broad language of these sections, the legislative history of their enactment in 1968 indicates that the Legislature intended merely to 'nullify the effect upon the law . . . of certain . . . decisions of the Court of Appeal and of the Supreme Court . . .' . . . [which] permitted the board to reclassify or combine specific and cumulative injuries for the purpose of avoiding the bar of the statute of limitations. . . ." (*Id.,* at pp. 501-502, fn. 5.; see also *Zenith Insurance Co.* v. *Workers' Comp. Appeals Bd.* (1981) 124 Cal.App.3d 176 [176 Cal.Rptr. 920].)

There is nothing in this legislation which precludes an employee from recovery of medical expenses pursuant to the provisions of section 4600. It does not limit an employer's joint and several liability to its employee for the full award of present and future medical treatment made necessary in whole or in part by the industrial injury occurring in its employ.

### III

Buhlert's sole authority for its contrary position is this court's decision in *Savage Plumbing Co.* v. *Workers' Comp. Appeals Bd., supra,* 131 Cal.App.3d 517. Section 3208.2 was there relied upon as establishing a substantive rule for the apportionment of employer liability for medical treatment necessitated by successive industrial injuries. The case involved an employee who, in 1976, suffered an industrial injury in California requiring surgery and was awarded disability benefits and medical expenses pursuant to a timely claim. In 1977 he moved to Pennsylvania where he sustained another industrial injury requiring surgery for which he received benefits from a Pennsylvania carrier. The employee moved back to California and, in 1979, underwent a third operation. When the Pennsylvania carrier refused to pay for that surgery, the employee filed separate actions with the Pennsylvania and California workers' compensation boards. In the California action, medical evidence that both industrial injuries contributed to the need for treatment was introduced. The California Board awarded full payment for medical treatment. On review, we annulled the award. We asserted that where an "employee suffers two distinct industrial injuries, section 3208.2 mandates apportionment between successive employers, wherever located, for the 'combined effects' of the injuries." (*Id.,* at p. 526.) We concluded that the Board "should have determined the relative contributions each injury made to [the employee's] need for treatment and awarded him only that portion of the cost attributable to the California injury."

(*Id.,* at p. 524.) We remanded the case to the Board with directions to apportion the costs of medical treatment for the third surgery.

In *Savage* we did not refer to the provisions of section 4600 nor examine the language of section 3208.2, consistent with its antimerger purpose as revealed in the legislative committee comment and the amendment to section 5303. Rather, we assumed that section 3208.2, in referring to "the apportionment between [multiple] injuries of liability for disability benefits, the cost of medical treatment, and any death benefit," established a new *substantive* rule requiring the apportionment of such benefits between an employer and employee.

Upon further reflection, we now conclude that our assumption in *Savage* about the effect of section 3208.2 was unwarranted. "This statute," a noted commentator has since observed, "refers to apportionment of loss, not liability, and does not require apportionment of loss between industrial injuries to be decided in the employee's action. The effect of the decision [in *Savage*] is to place the burden of paying for industrial harm on the employee contrary to the intent of the Workers' Compensation Act. Employers will be likely to withhold payment of temporary disability and refuse to pay for medical treatment until the extent of liability is determined by the board when faced with a similar fact situation. And although the court's goal to protect California's employers and hold them responsible only for medical costs related to California injuries is just, the same result can be achieved in an action for contribution or reimbursement without adversely affecting the injured employee." (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation, *supra,* § 14.03 [8], p. 14-51.) Thus, for the reasons cited there and those set forth in this opinion, we disavow that assumption and consequently disapprove the *Savage* construction of section 3208.2.

We have no occasion in this case to determine the circumstances under which an employee may seek medical benefits from a prior employer by virtue of the contributing effect of an injury in that employment. (See fn. 8, *ante.*) Accordingly, we do not consider whether the result in *Savage* would be altered by this decision. In the ordinary case the employee should look directly to his present employer, if accessible to California's jurisdiction, for the full costs of medical treatment wholly or partially resulting from the latest injury. (See *Royal Globe, supra,* 63 Cal.2d at p. 64.)

### DISPOSITION

No claim has been made that Gilpin slumbered on his rights and is attempting to receive compensation from Buhlert predicated upon a claim which, but for a merging with a claim arising from a subsequent injury,

would be barred by the statute of limitations. It appears that Gilpin filed a claim in Oregon after his first specific injury. As a result of that injury, his back was apparently left in a weakened condition. That preexisting condition, coupled with the new California injury, resulted in the need for medical care. Buhlert is fully liable for all medical treatment "which is reasonably required to cure or relieve from the effects of the injury . . . ."

The judgment is affirmed.

Carr, J., and Sparks, J., concurred.