[No. A128365. First Dist., Div. Five. Nov. 16, 2010.]

SAN FRANCISCO UNIFIED SCHOOL DISTRICT, Petitioner, v. WORKERS' COMPENSATION APPEALS BOARD and LINDA CARDOZO, Respondents.

**4**

COUNSEL

Wiggins, Richard, Romano & Thorson, Thomas A. Richard and Bradford A. Rosenblatt for Petitioner.

McDonnell & Weaver and Dennis S. Weaver for Respondent Linda Cardozo.

No appearance for Respondent Workers' Compensation Appeals Board.

OPINION

SIMONS, J.—Labor Code section 3208.3[1] provides that a psychiatric injury is compensable only if certain conditions are satisfied. Section 3208.3, subdivision (h) (section 3208.3(h)) provides, in part, that no compensation shall be paid for a psychiatric injury "if the injury was substantially caused by a lawful, nondiscriminatory, good faith personnel action." Section 3208.3, subdivision (b)(3)[2] defines " 'substantial cause' " to mean "at least 35 to 40 percent of the causation from all sources combined."

In this case, the workers' compensation administrative law judge (ALJ) concluded that respondent Linda Cardozo suffered a psychiatric injury caused predominately by industrial factors. The ALJ also concluded that Cardozo's claim for compensation was not barred by section 3208.3(h) after finding that lawful, nondiscriminatory, good faith personnel actions constituted less than 35 percent of all industrial and nonindustrial causes of her psychiatric injury. San Francisco Unified School District (District) filed a petition for writ of review arguing that the ALJ should only have considered the total of the industrial causes and disregarded the nonindustrial causes when calculating the percentage of the psychiatric injury attributable to good faith personnel actions. If this argument were correct, it would require a recalculation, leading to a denial of compensation to Cardozo under section 3208.3(b)(3) and section 3208.3(h). However, we reject District's argument and affirm.[3]

## BACKGROUND

Cardozo, an elementary school bilingual teacher for District for 20 years, submitted a claim for workers' compensation benefits, claiming temporary

---

[1] All further undesignated section references are to the Labor Code.

[2] Hereafter all references to section 3208.3, subdivision (b) will be styled as section 3208.3(b).

[3] We reject Cardozo's assertion that District's petition lacks a reasonable basis requiring remand for consideration of attorney fees under section 5801.

disability from June 10, 2006, to August 21, 2007.[4] She claimed a cumulative injury to her psyche arising out of her employment, with the cumulative trauma period running through June 9, 2006. Cardozo claimed her injury was caused by the stress of teaching a class in two languages that combined two grade levels, and her difficulties with her school's principal. District claimed Cardozo's alleged injury was caused by "good faith personnel actions," i.e., unsatisfactory performance reviews and written disciplinary warnings, and was therefore barred under section 3208.3(h).

The parties selected Dr. Allan Kipperman as the agreed medical examiner and Cardozo first saw him in August 2007. However, at the November 2008 hearing, the ALJ granted District's motion to refer Cardozo to an independent medical examiner to render an opinion on the issue of apportionment as to "the industrial and nonindustrial factors of disability" and as to "the extent of the responsibility for [Cardozo's] current condition that may be attributed to the alleged good faith nondiscriminatory personnel action." The parties selected Dr. Gordon Baumbacher as the independent medical evaluator.

Cardozo was evaluated by Baumbacher on March 25, 2009. In his April 17, 2009 report, Baumbacher apportioned 15 percent of Cardozo's impairment to factors associated with her personal circumstances and 85 percent to factors associated with her work setting at District's Bessie Carmichael School (BCS). Baumbacher also concluded that of the causal factors attributable to Cardozo's employment at BCS, 60 percent were associated with difficulties encountered in daily teaching for over 20 years, and 40 percent were associated with nondiscriminatory, good faith personnel actions including performance evaluations, decisions regarding future training and reprimands by the BCS principal. Baumbacher then concluded that 51 percent of Cardozo's overall impairment would be apportioned to factors regarding classroom teaching (60 percent of 85 percent), and 34 percent would be apportioned to factors associated with the BCS principal (40 percent of 85 percent).

On January 20, 2010, the ALJ issued the following findings: (1) while employed between June 9, 2005, and June 9, 2006, Cardozo sustained injury to her psyche arising out of and in the course of her employment; (2) her psychiatric injury was caused 15 percent by nonindustrial factors, 51 percent by Cardozo's activities as a classroom teacher, and 34 percent by "personnel

---

[4] Cardozo returned to work for District in the 2007–2008 academic year; as of August 2008 she worked as a drama teacher.

actions" undertaken by the BCS principal; and (3) District did not meet its burden of proof regarding its assertion that Cardozo's claim is barred by the "good faith personnel action defense" set forth in section 3208.3(h). In her decision, the ALJ explained: "Thus, according to . . . Baumbacher 34 [percent] of the causation of the injury is attributable to what [District] argue[s was] lawful, nondiscriminatory good faith personnel actions. This falls short of the 35 to 40 percent range set out in [s]ection 3208.3. [¶] That being so, as a matter of law, [District] cannot defeat [Cardozo's] claim by asserting the 'good faith personnel action' defense. [¶] I therefore find that [Cardozo] has met her burden of proving a compensable injury to her psyche, and that [District has] not met [its] burden of proving that the injury was substantially caused by lawful, nondiscriminatory good faith personnel actions."

*ALJ's Decision on Reconsideration*

Thereafter, District sought reconsideration of the ALJ's decision, asserting that the finding that Cardozo's injury was caused 15 percent by nonindustrial causes, 51 percent by her activities as a classroom teacher, and 34 percent by lawful, nondiscriminatory, good faith personnel actions was erroneous. As the ALJ framed it, resolving District's challenge required a determination whether the calculation of "substantial cause" should be limited to a consideration of only the industrial causes or should include consideration of the 15 percent apportioned to nonindustrial causes. The ALJ concluded that when read together, the plain meaning of section 3208.3(b)(3) and section 3208.3(h) is that " 'all causes,' whether industrial or not, must be taken into account in determining whether or not a psychiatric injury was substantially caused by 'good faith personnel actions.' " The ALJ also concluded that this interpretation is not inconsistent with the Legislature's stated intent of reducing psychiatric injury claims. "Section 3208.3(b)(1)'s requirements that actual events of employment be involved, as opposed to generalized concerns about the financial stability of the employer . . . , and that those events were the predominant cause of the injury, are not disturbed."

The Workers' Compensation Appeals Board (WCAB) adopted and incorporated the ALJ's decision denying reconsideration. This timely writ petition followed.

## DISCUSSION

### I. *Standard of Review*

"The WCAB's findings on questions of fact are conclusive where supported by substantial evidence. (§§ 5952, 5953; [citation].) However, the

construction of labor statutes and their applicability to a given situation are matters of law subject to our independent review. [Citations.] Even so, the WCAB's statutory interpretation is entitled to great weight unless it is clearly erroneous. [Citation.]" (*Verga v. Workers' Comp. Appeals Bd.* (2008) 159 Cal.App.4th 174, 183 [70 Cal.Rptr.3d 871].)

■ Our first task in reviewing a statute " '. . . is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance . . . to every word, phrase and sentence in pursuance of the legislative purpose.' [Citation.] 'Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation. [Citation.]' [Citation.] 'Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent. [Citations.]' [Citation.]" (*Pacific Gas & Electric Co. v. Workers' Comp. Appeals Bd.* (2004) 114 Cal.App.4th 1174, 1180 [8 Cal.Rptr.3d 467] (*Pacific Gas & Electric*).)

II. *Governing Statute*

Workers' compensation claims for psychiatric injury are governed by section 3208.3, which provides, in pertinent part:

"(b)(1) In order to establish that a psychiatric injury is compensable, an employee shall demonstrate by a preponderance of the evidence that actual events of employment were predominant as to all causes combined of the psychiatric injury.

"(2) Notwithstanding paragraph (1), in the case of employees whose injuries resulted from being a victim of a violent act or from direct exposure to a significant violent act, the employee shall be required to demonstrate by a preponderance of the evidence that actual events of employment were a substantial cause of the injury.

"(3) For the purposes of this section, 'substantial cause' means at least 35 to 40 percent of the causation from all sources combined.

"(c) It is the intent of the Legislature in enacting this section to establish a new and higher threshold of compensability for psychiatric injury under this division. [¶] . . . [¶]

"(h) No compensation under this division shall be paid by an employer for a psychiatric injury if the injury was substantially caused by a lawful,

8

nondiscriminatory, good faith personnel action. The burden of proof shall rest with the party asserting the issue."

" '[S]ection 3208.3 was enacted as part of the Margolin-Greene Workers' Compensation Reform Act of 1989. It is part of the Legislature's response to increased public concern about the high cost of workers' compensation coverage, limited benefits for injured workers, suspected fraud and wide-spread abuses in the system, and particularly the proliferation of workers' compensation cases with claims for psychiatric injuries.' [Citation.] As originally enacted, subdivision (b) of the statute provided, 'In order to establish that a psychiatric injury is compensable, an employee shall demonstrate by a preponderance of the evidence that actual events of employment were responsible for at least 10 percent of the total causation from all sources contributing to the psychiatric injury.' [Citation.]" (*Pacific Gas & Electric, supra,* 114 Cal.App.4th at pp. 1180–1181.)

In 1993, section 3208.3 underwent significant revision. (*Larch v. Contra Costa County* (1998) 63 Cal.Comp.Cases 831, 833.) Among those revisions, the Legislature redesignated the existing subdivision (b) as (b)(1) and substituted the following italicized language: "In order to establish that a psychiatric injury is compensable, an employee shall demonstrate by a preponderance of the evidence that actual events of employment were *predominant as to all causes combined of* the psychiatric injury." (Italics added; Stats. 1993, ch.118, § 1, pp. 1225–1226; accord, *Lockheed Martin Corp. v. Workers' Comp. Appeals Bd.* (2002) 96 Cal.App.4th 1237, 1242–1243 [117 Cal.Rptr.2d 865].) Although "predominant as to all causes" is not defined within the statute, courts have held the phrase "is intended to require that the work-related cause has greater than a 50 percent share of the entire set of causal factors." (*Department of Corrections v. Workers' Comp. Appeals Bd.* (1999) 76 Cal.App.4th 810, 816 [90 Cal.Rptr.2d 716]; accord, *Sonoma State University v. Workers' Comp. Appeals Bd.* (2006) 142 Cal.App.4th 500, 506 [48 Cal.Rptr.3d 330].)

As relevant here, the 1993 amendments also added subdivisions (b)(2), (b)(3) and (h) to section 3208.3. (See Historical and Statutory Notes, 44A West's Ann. Lab. Code (2003 ed.) foll. § 3208.3, p. 381.)

"Section 3208.3, subdivision (c) underscores the Legislature's intent that claims seeking benefits based on psychiatric injuries be evaluated strictly." (*Pacific Gas & Electric, supra,* 114 Cal.App.4th at p. 1181.) "[T]he language and legislative history of section 3208.3 instruct that the Legislature's public policy goals should be considered when determining whether an award of benefits is warranted. The Legislature made quite clear that it intended to *limit* claims for psychiatric benefits due to their proliferation and

their potential for fraud and abuse. Therefore, any interpretation of the section that would lead to more or broader claims should be examined closely to avoid violating express legislative intent. [Citation.]" (*Id.* at p. 1182.)

III. *Analysis*

■ When a psychiatric injury is alleged and the "good faith personnel action" defense has been raised, the ALJ must evaluate the defense according to a multilevel analysis. First, the ALJ must determine whether the alleged psychiatric injury involves actual events of employment and, if so, whether competent medical evidence establishes the required percentage of industrial causation. If these first two conditions are met, the ALJ must then decide whether any of the actual employment events were personnel actions. If so, the ALJ must next determine whether the personnel action or actions were lawful, nondiscriminatory, and made in good faith. Finally, if all these criteria are met, competent medical evidence is necessary as to causation; that is, whether or not the personnel action or actions are a substantial cause, accounting for at least 35 to 40 percent of the psychiatric injury as defined by section 3208.3(b)(3). (*Rolda v. Pitney Bowes, Inc.* (2001) 66 Cal.Comp.Cases 241, 245–247; 1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (rev. 2d ed. 2010) § 4.69[3][d], p. 4-100.)

District contends the substantial cause calculation contained in section 3208.3 should not be interpreted to include nonindustrial causes. It notes Baumbacher's finding that, as to those factors attributable to Cardozo's employment, 40 percent of her psychiatric injury was due to good faith personnel actions. District argues this finding should have barred her claim under section 3208.3(h).

Section 3208.3, subdivision (c) (section 3208.3(c)) expresses the purpose behind the statute: "to establish a new and higher threshold of compensability for psychiatric injury under this division." District argues that if nonindustrial apportionment is included in calculating substantial cause, the employer is "essentially penalized if the claimant/employee has greater or more substantial preexisting nonindustrial disability."

■ The plain language of section 3208.3 is determinative. Section 3208.3(b)(3) directs us to consider "all sources combined" in calculating the percentage of psychiatric injury caused by good faith personnel actions. "All sources combined" can only reasonably be interpreted to mean industrial and

nonindustrial sources. In addition, as we noted above, the similar phrase "all causes combined" in section 3208.3(b)(1) has been interpreted to mean "the entire set of causal factors." (*Department of Corrections v. Workers' Comp. Appeals Bd., supra*, 76 Cal.App.4th at p. 816.) Clearly, the entire set of causal factors includes the industrial and nonindustrial causes of the psychiatric injury. Thus, on its face, the statute contradicts District's argument that nonindustrial sources of an employee's injury should be excluded when determining whether the psychiatric injury was substantially caused by a good faith personnel action.

District argues that section 3208.3(b)(3) applies only to subdivision (b), but, again, the plain language of section 3208.3(b)(3) undermines District's position. It defines " 'substantial cause' " "[f]or the purposes of this *section, . . .*" which includes section 3208.3(h). (Italics added.)

District argues this interpretation of section 3208.3(h) is inconsistent with the statutory intent, set out in the statute when it was first adopted in 1989, "to establish a new and higher threshold of compensability for psychiatric injury." (§ 3208.3(c).) Section 3208.3(b)(2), section 3208.3(b)(3) and section 3208.3(h) were enacted together in 1993. On balance, these subdivisions favored employers, but each separate piece of the legislation did not. For example, section 3208.3(b)(2) establishes a *lower threshold* for an employee's psychiatric injuries where such injuries resulted from the employee's being the victim of a violent act or from direct exposure to a significant violent act. Thus, section 3208.3(b)(2) "creates a slightly more employee-favorable rule for claims arising out of violent occurrences." (*Wal-Mart Stores, Inc. v. Workers' Comp. Appeals Bd.* (2003) 112 Cal.App.4th 1435, 1440, fn. 7 [5 Cal.Rptr.3d 822].) Newly enacted section 3208.3(b)(1) elevated the level of industrial causation of a psychiatric injury from 10 percent of all causes to "predominant as to all causes," and section 3208.3(h) added the good faith personnel action defense. But the legislative package also limited this defense by providing that it applied only where the personnel action "substantially caused" the psychiatric injury. We decline District's invitation to ignore the plain language defining "substantial cause" and impose a definition the Legislature could have but did not choose.

 We conclude that, when read together, the plain meaning of section 3208.3(b)(3) and section 3208.3(h) is that the entire set of industrial and nonindustrial causal factors must be taken into consideration in determining whether or not a psychiatric injury was substantially caused by "good faith personnel actions."

## DISPOSITION

The petition for writ of review is denied. This opinion is final forthwith as to this court.

Jones, P. J., and Bruiniers, J., concurred.